## No. 12,531.

### L. H. GOLDMAN VS. SIMON GOLDMAN.

Amicable compounders are judicial appointees who are selected by the parties to a litigation over partnership and like matters; but once they have been appointed and qualified, and one or more of them resign and others are appointed in their stead, it will be assumed that such appointments were authorized unless the contrary clearly appears.

APPEAL from the First Judicial District Court for the Parish of. Ouachita.  *Potts, J.*

*Boatner, Potts & Hudson* for Plaintiff, Appellant.

*A. A. Gunby* and *E. T. Lamkin* for Defendant, Appellee.

Argued and submitted June 3, 1897.

Opinion handed down June 22, 1897. .

Rehearing refused January 24, 1898.

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J.  The grounds of the motion are (1) that the judgment appealed from is based on an award of amicable· compounders and is not reviewable on appeal;  (2) there is no evidence or statement of facts in the record from which this court can review the judgment appealed from.

The theory on which the plaintiff prosecutes this appeal is, that when the report of the alleged amicable compounders was filed, and the defendant's counsel ruled him to show cause why same should not be homologated, his counsel submitted an extended opposition thereto, which was, on motion of defendant's counsel, stricken from the record; and consequently he was not permitted to introduce any evidence in support of his opposition.  And it is further to the effect that there were no amicable compounders selected by the parties and appointed by the court conformably to law, and, for that reason, the judgment based upon the report which was submitted, is necessarily illegal, and therefore appealable.

In our opinion the appellant is entitled to a hearing on these ques-

tions of law, and his right to an appeal must be recognized and sustained.

The motion to dismiss is denied.

### ON THE MERITS.

This suit is one for the settlement of a commercial partnership which once existed between the plaintiff and defendant, the domicile of which was in the city of Monroe; and it was conducted under the firm name and style of L. H. Goldman & Brother, from 1887 until the end of the year 1890, when it was dissolved by mutual consent— the defendant retiring and the plaintiff being left in possession of the books and assets of the partnership for the purposes of liquidation and making a final settlement of the partnership business and affairs.

The plaintiff avers that the business of said copartnership has been fully liquidated, and that there is due him, on a fair settlement of same, by the defendant as his copartner, the sum of five hundred dollars; and that he is desirous of having a full, fair and final settlement thereof.

The answer of the defendant is a general denial, coupled with an averment that instead of being indebted to the plaintiff "on a fair, just and legal settlement (plaintiff) owes him (defendant) three hundred dollars;" and his prayer is that plaintiff's demand be rejected, and for general relief.

As appears from the statement of the case, as it is presented upon the appellee's motion to dismiss the appeal, there was a submission made of the partnership books and accounts to persons appointed by the judge a quo, for the purpose of making an examination thereof, and a report of their findings therefrom to the court; and the record discloses that the court based its opinion exclusively upon the report of the experts or auditors, and rendered a judgment in favor of the defendant for the sum of three thousand four hundred and sixty-seven dollars and nineteen cents, and all costs of suit, including the fees of the amicable compounders.

It is from that judgment that the plaintiff prosecutes this appeal.

A better understanding of the course of proceedings in the lower court can be had by a brief historical statement of them as they occur in the record, chronologically, and which are substantially as follows, viz.:

On the 17th of November, 1896, the plaintiff filed a petition to the effect " that a true settlement of the partnership and an exact showing of the items of debits and credits between the partners to said business can best be made by auditors appointed by the court, which is necessary in order to facilitate the trial of the case."

Thereupon he prayed " that the court appoint two auditors, one at the suggestion of the plaintiff, and the other at the suggestion of the defendant, who shall be duly summoned and sworn, and to whom shall be (submitted) the books, papers and accounts of the mercantile firm of  L. H. Goldman & Bro. for their examination, investigation, and report to the court a true settlement between plaintiff and defendant," etc.   *   *   *   " That in the event of a disagreement between said auditors in their reports, the (judge) shall appoint a third (person) as arbitrator, to be *summarily* sworn," etc.

On the same date, and in the same order, the judge *a quo* appointed R. L. Prophet and H. D. King auditors, and W. R. Hudson as umpire, to examine the books and papers, and report as provided for in the foregoing petition; and upon the following day said parties took an oath, in which it was declared that they " having been appointed as experts to examine the books, papers and accounts of the late firm of L. H. Goldman & Bro." would " examine said books, papers and accounts, and report as ordered by the court," etc.

On the 3d of December, 1896, said committee made a report of their investigation to the court, the substance of which is contained in this statement, viz.:

" We would also represent that said partnership, as we are informed by both parties, was dissolved on the 31st of January, 1891, and that on that day, as appears from the face of the ledger proper, the balance due to Simon Goldman, the retiring partner, was five thousand five hundred and sixty-five dollars and forty-four cents, as is evidenced by the business statement herewith presented," etc.

Thereupon the auditors pray that they be discharged.

Their report is accompanied by a memorandum to the effect that " the above figures do not include the petty ledger accounts, of which there is no record in the general ledger, and nothing to show that they were included in the settlement, or how (same were) disposed of."

On the 7th of December, 1896, the defendant's counsel filed

a motion, in which he invites attention to the fact that the auditors, in making their examination and report, had failed and omitted to take into account the petty ledger and other papers and memoranda, and that he had been injured thereby, and requested the court to recommit their said report to them with instructions to examine same, and make an additional report; and upon the 9th of December, 1896, the court *a qua* made an order to that effect upon the agreement of the parties—it being therein recited that the persons so appointed " are to act as judicial arbitrators and amicable compounders in this case with authority to hear evidence upon all differences between both sides as to accounts and to report to the court on Monday, 11th of December, 1896," etc.

On the following day, December 10, the aforesaid persons took and subscribed an additional oath as judicial arbitrators and amicable compounders.

On the 16th of December, 1896, R. L. Prophet resigned his trust or appointment, assigning as his excuse the alleged personal insults and abuse of W. R. Hudson, a member of the committee appointed by the court; and said resignation was received by the court and he was discharged from further service.

On the 21st of December, 1896, W. R. Hudson and H. D. King, the two remaining members of the committee, made a report to the court, in which they state that upon taking up and continuing their previous report of the 30th of November, 1896, they find "that the plaintiff, L. H. Goldman, is justly indebted and due to Simon Goldman three thousand and sixty-one dollars and nineteen cents "—an amount less then that awarded in said previous report by two thousand five hundred and four dollars and twenty-five cents.

On the 22d of December, 1896, the defendant's counsel filed a motion in which they prayed for the homologation of said award, and that same be made executory and a judgment be entered up against the plaintiff, and in his favor, in accordance therewith; and thereupon the plaintiff's counsel filed an opposition thereto on the grounds (1) that the report is misleading and erroneous, and does not present a true showing of the rights of the partners in said commercial business; (2) that said report was not participated in by the entire committee appointed by the court, but that same was the result of the labors of but two of them; and (3) that H. D. King, a member of said committee, was violently prejudiced against him, and that the

only member whom he was permitted to select had been compelled to resign.

On considering said objections, the judge *a quo* appointed H. B. Newhall to fill the vacancy occasioned by the resignation of R. L. Prophet, and recommitted the matter to the full committee as thus composed; and to this ruling the plaintiff by counsel objected and reserved a bill of exceptions to any further submission to this committee for the following reasons, viz.:

" For the reason that H. D. King, one of said compounders, was not fair and impartial, as (it was) contemplated by law he should be, but is violently prejudiced against plaintiff, and had publicly and repeatedly announced that he represented on that committee the interests of the defendant, and proposed to look especially after the same, and that he would not believe the plaintiff on his oath in any manner."

On the following day the judge, considering the grounds of plaintiff's complaint against H. D. King, revoked his appointment and selected and appointed J. J. Jordan in his place and stead, and as thus constituted the judge *a quo* again committed the partnership affairs to the three amicable compounders for examination and report, to which plaintiff's counsel objected, and excepted in general terms without assigning any additional reasons therefor.

On the next day, December 24, 1896, the plaintiff's counsel filed a motion to revoke the order referring this case to amicable compounders for the following reasons, viz.: (1) that R. L. Prophet had resigned and the court appointed another person to fill the vacancy thus occasioned without his consent—said appointment was without the sanction or authority of law; (2) that the appointment of H. D. King and W. R. Hudson should be set aside and revoked because they " are not fair and impartial, but are violently prejudiced against the plaintiff."

The judge declined to remove W. R. Hudson, and having removed H. D. King and appointed J. J. Jordan in his place, the motion to revoke was refused; and upon the 12th of January, 1897, the three amicable compounders took and subscribed the necessary oath, the plaintiff's counsel retaining no bill of exceptions to the ruling of the court.

On January 19, 1897, the three arbitrators presented their report to the court, showing that L. H. Goldman is indebted to the defend-

3

ant in the sum of three thousand four hundred and sixty-seven dollars and nineteen cents, for which they gave judgment in the defendant's favor; but the report explains why they increased the previous award by the amount of three hundred and ninety-six dollars.

The report contains this important statement, viz.:

"We beg to state that we have not been furnished with all the books showing assets of the firm. Both their petty ledger and another small ledger, which doubtless show assets, can not be or are not produced by the plaintiff in this case, although he has been repeatedly asked to produce the same. We are, therefore, convinced that many of the assets in his charge are not accounted for, which, if placed in the hands of your committee, would result in a much larger judgment against the said L. H. Goldman, plaintiff in this case."

On the 20th of January, 1897, the defendant's counsel filed a motion to homologate said award, and to have a judgment rendered pronouncing it executory; and after due service of said motion and order, the plaintiff's counsel filed an extended opposition, in which are set out with detail, and particularly all the grounds heretofore recited, and many others unnecessary to be mentioned.

This was followed by a motion on the part of the defendant to strike out the averments of the opposition, principally upon the grounds which have been assigned by the judge a quo in the rulings he had made; and said motion having been sustained, the opposition was stricken accordingly, but the plaintiff's counsel retained no bill of exceptions to the ruling.

Thereupon the judge rendered a decree homologating and approving the award of the amicable compounders and giving a judgment against the plaintiff for the sum of three thousand four hundred and sixty-seven dollars and nineteen cents in favor of the defendant; and it is from that judgment the plaintiff has appealed.

From the foregoing statement two propositions are clearly established, viz.: (1) that the plaintiff is indebted to the defendant on a fair, final settlement of the partnership accounts in the full amount of the award, if not more; and (2) that all the defences and objections that were interposed in behalf of the plaintiff are merely technical, and under the circumstances related, can not be favorably entertained.

In the first place the amicable compounders were selected and

appointed by the court upon the joint motion of plaintiff's and defendant's counsel, and the committee reported that the plaintiff was indebted to the defendant in the sum of five thousand five hundred and sixty-five dollars and forty-four cents.

In the next place the matter was recommitted on the application of defendant's counsel, and two out of the three arbitrators reported that the plaintiff was indebted to the defendant in the sum of three throusand and sixty-one dollars and nineteen cents, the third member of the committee having resigned his trust.

Upon the defendant's counsel moving for the homologation of said award, plaintiff's counsel opposed same upon the ground that it was participated in by only two members of the committee, and that another was violently opposed to him; and this opposition having resulted in the appointment of a successor of the one resigned, the plaintiff's objection was removed.

The plaintiff's counsel then urged objection to H. D. King, the third member, on the ground that he was biased and prejudiced against him, but the judge a quo at once removed King and appointed Jordan, thus again completing the complement of three arbitrators. To this appointment plaintiff's counsel excepted, but assigned no reason for his objection.

After the completion of the board and the three amicable compounders had subscribed their oaths, the plaintiff's counsel filed a motion to annul and revoke the order referring the case to amicable compounders; but upon the declination of the judge so to do the counsel reserved no bill of exceptions.

And when the arbitrators presented their final report and award to the court it was opposed on various grounds; but when upon the motion of the defendant's counsel the opposition was stricken from the record, the counsel of plaintiff retained no bill of exceptions.

It is undoubtedly true and conceded that amicable compounders are judicial appointees who are selected by the parties to a pending litigation over complicated accounts of partnership, though appointed by the judge of first instance and are, upon their oaths, to examine all the affairs of the partnership and make a report upon which the judgment of the court is to be predicated; but once they are appointed and qualified and have made a report, and thereafter one or more of them withdraw, or are removed at the instance of one of the litigants, and one or more are appointed in their stead, it will be

assumed that such appointments have been made with the knowledge or acquiescence of the parties, in the absence of any specific objection having been made seasonably to their appointment *on the ground that the judge had not the authority to make the appointment and a bill of exceptions retained to his ruling.*

If this were not so, parties litigant would have the opportunity of testing the strength of demands of parties who are opposed to them, by means of the award of arbitrators, to whose capacity they could object subsequently, in case the report were unfavorable to their interest, or in which they could acquiesce in case the award was favorable thereto.

This situation of affairs is clearly shown in this case.

For it was upon the petition of the plaintiff as the member of the copartnership who retained the assets and was entrusted with the liquidation of its affairs that this suit was brought. It was upon his petition that amicable compounders were selected. And it was upon his motion that the first award against him was set aside because there were but two of the arbitrators participating therein—the third member who was appointed at his suggestion having resigned. And it was also upon his motion that another member, H. D. King, was removed on the ground of alleged prejudice against him and J. J. Jordan appointed in his place, notwithstanding King had been chosen by the defendant.

The learned judge of the lower court was evidently disposed to do his utmost to secure the most competent and unbiased persons possible for the discharge of the delicate and responsible duties which the law has imposed upon amicable compounders, and in so doing his rulings were nearly altogether in favor of plaintiff.

Our examination of the record has fully satisfied our minds that he has done substantial justice between the parties.

Judgment affirmed.

The Chief Justice takes no part in this case.